# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 15-23

PARVIN WESLEY BROWN, ET UX

VERSUS

STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF
TRANSPORTATION AND DEVELOPMENT

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CATAHOULA, NO. 27,245
HONORABLE KATHY JOHNSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
## JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks and
Elizabeth A. Pickett, Judges.

**AFFIRMED.**

Charles S. Norris, Jr.
Christopher J. Norris
Norris Law Firm, LLC
P.O. Box 400
8 N. Oak Street
Vidalia, LA  71373
(318) 336-1999
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Parvin Wesley Brown and Rhonda Brown

Daniel Vidrine
Law Offices of Daniel Vidrine
12445 Park Villa Avenue
Baton Rouge, LA  70816
(225) 752-4520
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Parvin Wesley Brown and Rhonda Brown

**James D. "Buddy" Caldwell, Attorney General**
**Ronald J. Fiorenza, Special Assistant Attorney General**
**Provosty, Sadler, DeLaunay, Fiorenza & Sobel**
**934 Third Street, Suite 800**
**P.O. Drawer 1791**
**Alexandria, LA 71309-1791**
**(318) 445-3631**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **State of Louisiana, through the DOTD**

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

On April 19, 2012, Weston Brown, who was fifteen years old at the time, was a guest passenger in a pick-up truck driven by his seventeen year old cousin, Dustin Brown. They were traveling on Louisiana Highway 923 in Catahoula Parish. Dustin passed a white Ford Explorer in the other lane of traffic before returning to his lane. Shortly after the passing maneuver, Dustin saw a white automobile stopped in the road.

While attempting to avoid the stopped vehicle, Dustin attempted to pass it in the other lane of travel. At that same time, the white automobile, operated by Amanda Coleman, began to turn left. In response, Dustin swerved farther to the left, resulting in his two left wheels leaving the asphalt portion of the roadway where the shoulder was located. Dustin then attempted to return to the right lane but overcorrected his vehicle, causing it to exit the highway on the left side. The truck entered a ditch, ultimately striking a solid concrete culvert. The truck flipped in the air, ejecting Weston Brown, who ultimately died from his injuries. It was acknowledged by all parties that Dustin was operating his truck in excess of the posted speed limit when these events occurred.

Louisiana Highway 923 was built in the 1950's using the 1948 standards. When built it had two ten-foot lanes with five-foot shoulders on each side. The evidence established there was an overlay project on Hwy. 923 in 1998, which expanded the width of the travel lanes, while decreasing the width of the shoulders. Whether appropriate standards were used by DOTD during the overlay project was a contested issue at trial. DOTD contended because the overlay project was a resurfacing project and not a reconstruction project, it was able to use the 1948 standards rather than implement more modern standards. Plaintiffs disagreed and

contended mandatory American Association of State Highway Transportation Officials (AASHTO) standards required the use of more modern standards.

Plaintiffs, the parents of Weston Brown, Parvin Wesley Brown and Rhonda Brown, filed suit against several defendants, including Leslie Brown (the owner of the truck driven by Dustin Brown and his father), Angela Brown (Dustin's mother), Dustin Brown, Amanda Coleman, State Farm Mutual Automobile Insurance Company (the insurer of the Brown vehicle), and the State of Louisiana, through the Department of Transportation and Development (DOTD). State Farm, Leslie Brown, Angela Brown and Dustin Brown were dismissed pursuant to a Partial Judgment of Dismissal signed on December 9, 2013. Amanda Coleman was dismissed pursuant to a Partial Judgment of Dismissal signed on May 12, 2014. That left DOTD as the sole remaining defendant.

A three-day jury trial commenced on May 14, 2014. Following trial, the jury returned a verdict finding DOTD to be thirty percent (30%) at fault, Dustin Brown sixty-five percent (65%) at fault and Amanda Coleman five percent (5%) at fault. The jury then awarded Plaintiffs special damage in the amount of $23,158.50, which reflected the medical and funeral expenses. Plaintiffs were also awarded $105,000.00 each in general damages.

Following the jury's verdict, Plaintiffs moved for a judgment notwithstanding the verdict (JNOV) on the issue of the jury's award of general damages, contending they were inadequate. A hearing was held on July 17, 2014. The trial court rendered judgment that day in open court granting the motion increasing the amount of general damages to $450,000.00 for each plaintiff. A written judgment reflecting that ruling was signed on July 28, 2014.

DOTD lodged this appeal, contesting three evidentiary rulings made by the trial court as well as the grant of Plaintiffs' JNOV. They asserted the following assignments of error:

2

1. The trial court abused its discretion by forbidding the admission of Trooper Jay Donaldson's scale diagram of the accident, as he was available for cross-examination by the Plaintiffs.

2. The trial court abused its discretion by prohibiting Trooper Donaldson from testifying fully about the speed of the vehicle at issue as he was qualified as an expert at traffic reconstruction and was available for cross-examination by the Plaintiffs.

3. The trial court abused its discretion by limiting the scope of Kelley Adamson's testimony to areas not discussed by Trooper Donaldson as such testimony was not cumulative.

4. The trial court abused its discretion by granting Plaintiffs' JNOV and substituting its determination of the proper amount of damages for the jury's where the jury's damage award was reasonable.

## ANALYSIS

### I. Evidentiary Rulings.

"The trial court is given vast discretion in its evidentiary rulings, and its decision to admit or exclude evidence will not be reversed on appeal in the absence of an abuse of discretion." *Succession of Jones*, 08-1088, p. 4 (La.App. 3 Cir. 3/4/09), 6 So.3d 331, 335 (citing *Bellsouth Telecomm., Inc. v. City of Lafayette*, 05-1478, 05-1505 (La.App. 3 Cir. 1/5/06), 919 So.2d 844). "We will not overturn a trial court's ruling on the admissibility of evidence unless that ruling is clearly wrong or we find that the trial court has committed an abuse of discretion in so ruling." *Gold, Weems, Bruser, Sues, & Rundell v. Granger*, 06-589, p. 9-10 (La.App. 3 Cir. 12/29/06), 947 So.2d 835, 843, *writ denied*, 07-0421 (La. 4/27/07), 955 So.2d 687.

In its first assignment of error DOTD contends the trial court's refusal to allow into evidence a scaled diagram prepared by Louisiana State Trooper Jay Donaldson was erroneous and a clear abuse of the trial court's vast discretion. Trooper Donaldson was deployed to the crash site to investigate the accident.

Trooper Donaldson prepared and attached to his accident report a scaled diagram that purported to depict the movement and speed of the Brown vehicle.

During Trooper Donaldson's testimony, counsel for DOTD attempted to discuss the scaled diagram. Plaintiffs' counsel objected, arguing that the diagram was attached to, and thus part of the accident report, rendering it inadmissible. The trial court ruled the scaled diagram could not be introduced into evidence, but did allow Trooper Donaldson to draw a diagram, using the scaled diagram as a reference, and allowed him to testify concerning this drawing.

While DOTD acknowledged the general rule that an accident report is not excluded from the hearsay rule and may not be admitted into evidence, it maintains "in this circumstance the general rule should not be applied to hamstring the DOTD's defense as it was in this case." DOTD contends this is particularly true as Trooper Donaldson was available for cross examination.

Plaintiffs note this court, in *Maricle v. Liberty Mutual Insurance Company*, 04-1149 (La.App. 3 Cir. 3/2/05), 898 So.2d 565, held an accident report prepared by the investigating officer clearly contains hearsay as defined in La.Code Evid. art. 801(C) and is inadmissible unless it fits within one of the exceptions found in La.Code Evid. art. 803. Moreover, this court also explained:

> [F]or a document to be admissible under La.Code Evid. art. 803(5), "it must be shown, among other things, that the witness had firsthand knowledge of the matter described in the memorandum." While [the trooper] had firsthand knowledge of matters he observed in his investigation, his conclusions with regard to the accident itself were acquired from his investigative analysis, and not from firsthand knowledge.

Plaintiffs note Trooper Donaldson's report was not written contemporaneously with the accident. He was not dispatched to the accident scene until the following day; thus, he had no firsthand knowledge of the accident.

The trial court made the determination, pursuant to La.Code Evid. art. 803, that the scaled diagram was part of the accident report and; thus, inadmissible.

4

This finding was not a clear abuse of the trial court's vast discretion, and DOTD's argument that it constituted reversible error is without merit.

DOTD also argued the trial court committed reversible error when it did not allow Trooper Donaldson to answer a hypothetical question regarding the minimum speed needed for the Brown vehicle to flip over after striking the concrete culvert. Plaintiffs' counsel objected to the question, and informed the trial court the "minimum speed" question was not part of Trooper Donaldson's report nor was it addressed in his deposition. The trial court limited Trooper Donaldson's testimony to what was contained in his report and what was covered in his deposition.

Plaintiffs also objected to Trooper Donaldson being allowed to answer a hypothetical question regarding the speed of the vehicle at the time of impact, because to do so would allow the jury to hear speculation from unproven facts not in evidence. Trooper Donaldson acknowledged in his deposition testimony that he was unable to calculate the speed of the Brown vehicle with any accuracy:

> Q. And can you comment upon the speed between point D and the point where it leaves the road the second time, that speed?
>
> A. I cannot give a determinant speed through a calculation, but I would say common sense – I don't know if that's the right word – it's decelerating. So it's going to be below sixty-three up to the point of impact. It's going to slow.
>
> Q. But you're not able to calculate the exact speed?
>
> A. Right, not with accuracy base on the cord and middle ordinate.

"It is a recognized principle of the law of evidence that if expert testimony given in response to hypothetical questions is predicated on a statement of unproven facts, it has no probative value and should not affect the outcome of the case." *Meany v. Meany*, 94-251 (La. 7/5/94), 639 So.2d 229, 236, citing *Brown v. Aetna Casualty & Surety Co.*, 96 So.2d 357, 360 (La.App. 2 Cir.1957). Therefore, the trial court

did not abuse its discretion in not allowing Trooper Donaldson to answer a hypothetical question not supported by facts in evidence.

Lastly, DOTD argues the trial court erred in limiting the testimony of Kelly Adamson, who like Trooper Donaldson was an accident reconstructionist, to areas not covered by Trooper Donaldson. Plaintiffs contend the trial court's ruling was proper, and prevented DOTD from "piling it on" with cumulative testimony from Mr. Adamson that replicated similar testimony from Trooper Donaldson.

In *Frederick v. Woman's Hospital of Acadiana*, 626 So.2d 467 (La.App. 3 Cir.1993), *writ denied*, 93-2991 (La. 2/4/94), 633 So.2d 169, this court considered the cumulative nature of multiple experts testifying as it related to balancing the probative value of the testimony against unfair prejudice, undue delay or waste of time considerations. The *Frederick* court reasoned:

> Admitting cumulative expert testimony not excludable on other grounds requires its fulfilling three conditions. The first condition questions the relevance of the testimony to be elicited. The second seeks to ascertain that the fact finder will be aided by the testimony. The third, balancing the probative value of this testimony against substantial prejudice, confusion, or inefficiency, guards against undue removal of reason from the fact finding process, as well as waste. Want of any of the three is fatal to admission of an expert's unbridled testimony.

DOTD relies on *Frederick* because in that case, this court permitted the testimony of two pediatric neurologists, but gave specific reasons for so doing:

> The two [experts] attended different medical schools; one is now principally a hospital administrator, the other a private practitioner. The trial judge therefore was correct in permitting each to testify, as each one's testimony added dimensional perspective to the testimony of the other, and the testimony was offered in behalf of different parties who could conceivably prove adverse to one another.

*Id*. at 472-73.

The facts in this case are distinguishable from *Frederick*. Both Trooper Donaldson and Mr. Adamson were experts in accident reconstruction, and both were tendered by the same party. In fact, as Plaintiffs point out, Mr. Adamson

6

acknowledged in his deposition that he based many of his conclusions and opinions on the findings made by Trooper Donaldson. The trial court did not prevent Mr. Adamson from testifying, but limited him from duplicating anything that Trooper Donaldson had testified to previously.

The admission of cumulative evidence is at the trial court's discretion. *Frederick*, 626 So.2d 467. Here, the trial court determined the expert testimony of Mr. Adamson on areas already covered by Trooper Donaldson would be cumulative, and thus inadmissible. We find no abuse of discretion in the trial judge's exclusion of this testimony.

## II. JNOV.

In *Joseph v. Broussard Rice Mill, Inc.*, 00-628, pp. 4-5 (La.10/30/00), 772 So.2d 94, 99 (quoting *Scott v. Hospital Serv. Dist. No. 1 of St. Charles Parish*, 496 So.2d 270, 273 (La.1986)) (additional citations omitted), the supreme court set forth the criteria for trial courts to use in determining when a JNOV is proper:

> JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. This rigorous standard is based upon the principle that "[w]hen there is a jury, the jury is the trier of fact."

The Louisiana Supreme Court in *Trunk v. Medical Center of Louisiana at New Orleans*, 04-181, pp. 4-5 (La. 10/19/04), 885 So.2d 534, 537, set forth the standard of review for an appellate court when reviewing a JNOV granted by a trial court:

In reviewing a JNOV, an appellate court must first determine whether the district judge erred in granting the JNOV by using the above-mentioned criteria in the same way as the district judge in deciding whether to grant the motion. *VaSalle* [*v. Wal-Mart Stores, Inc.*,] 01-0462, at pp. 11-12 [(La.11/28/01)], 801 So.2d [331,] 339. Thus, the appellate court must determine whether the "facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict." *Id*. at p. 12, 801 So.2d at 339 (quoting *Joseph* [*v. Broussard Rice Mill, Inc.*,] 00-628 at p. 5, 772 So.2d [94,] 99). If the appellate court determines that reasonable persons might reach a different conclusion, then the district judge erred in granting the motion and the jury verdict should be reinstated. *Id*.

At trial there was ample testimony establishing the close relationship between Weston and his parents, and the devastating impact his tragic death had upon them. Both parents required extensive psychiatric treatment to cope with their sorrow. DOTD did not refute any of this testimony and chose not to cross examine the Browns at trial.

We agree with the trial court that a JNOV was warranted in this case because reasonable men could not differ that the award of $105,000.00 in general damages to each parent was abusively low. The trial court set forth thorough reasons in support of that finding.

Having made a determination that JNOV was warranted on the issue of damages, the trial court is then authorized to make an independent assessment of damages. The court in *Rickerson v. Fireman's Fund Insurance Company*, 543 So.2d 519, 523 (La.App. 1 Cir.1989), cited with approval by the Louisiana Supreme Court in *Anderson v. New Orleans Public Service, Inc.*, 583 So.2d 829 (La.1991), explained:

> The *Coco* [*v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976)] standard of review does not apply to a trial court's review of a jury's award. Therefore, after rendering the JNOV, the trial court should have rendered a de novo award based on his independent assessment of injuries and damages.

Plaintiffs supported their motion for JNOV to the trial court with the case of

*Hebert v. Rapides Parish Police Jury*, 05-471 (La.App. 3 Cir. 7/12/06), 934 So.2d

912, *reversed on other grounds*, 06-2001 (La. 4/11/07), 974 So.2d 635, wherein a seventeen year-old girl was killed when she lost control of her vehicle and struck a bridge railing and died. The jury awarded each parent $750,000.00 in general damages, and this court affirmed that award, recognizing "[t]here is no question that the loss suffered by the Heberts as a result of their daughter's death is immeasurable, and we recognize the significance of their loss." Id. at 925. The case was later reversed by the supreme court on the grounds that DOTD had not assumed the duty of the local police jury to construct and maintain that particular bridge on an "off system" road. This court's affirmance of the $750,000.00 general damage award to each parent was not addressed.[1]

Our review of the record, including the extensive reasons given by the trial court, reveals no error in the granting of the JNOV and award of $450,000.00 in general damages to each parent.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to appellant, the State of Louisiana, through the Department of Transportation and Development.

**AFFIRMED.**

---

[1] DOTD cites the case of *Anderson*, 583 So.2d 829, wherein a $325,000.00 general damage award to a single parent, whose three year-old daughter was killed when struck by a New Orleans Public Service truck, was reduced on JNOV to $150,000.00. The JNOV was affirmed by the Supreme Court. We note *Anderson* was decided approximately twenty-five years ago and, although affirming the award, the supreme court did note that amount was "not necessarily the highest amount reasonably within the trial court's discretion." *Id.* at 834. However, the supreme court deferred to the discretion of the trial court in setting the amount of general damages, noting "the trial court is in a better position to make a damage assessment than is an appellate court." *Id.* We likewise defer to the trial court's discretion in the amount of general damages awarded herein.