652 So.2d 998 (1994)
Jimmie W. FITCH, Jr., et al., Plaintiffs-Appellees,
v.
VINTAGE PETROLEUM, INC., et al., Defendants-Appellants.
No. 94-346.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
Rehearing Denied January 18, 1995.
Lawrence N. Curtis, Lafayette, for Jimmie W. Fitch Jr., et al.
Christopher Leonard Zaunbreche, Michael J. Remondet Jr., Lafayette, for Vintage Petroleum, Inc., et al.
Before THIBODEAUX, COOKS and SAUNDERS, JJ.
THIBODEAUX, Judge.
Plaintiffs, Jimmie Fitch and his wife, Donna Fitch, appeal the amount of the jury awards in a suit brought to recover for personal injuries received in an automobile accident. They contend that a general damages award of $55,000.00 and a $90,000.00 loss of future earning capacity award to Mr. Fitch for three ruptured cervical discs and an unsuccessful fusion and a general damage award of $5,000.00 to Mrs. Fitch for fibromyositis are abusively low.
The jury found Jimmie Fitch thirty percent at fault in causing this rear end collision. The trial judge granted the Fitchs' Motion for Judgment Notwithstanding the Verdict and found the defendant, Robert Britt, to be one hundred percent at fault, but denied the motion with respect to an increase in the damages.
*999 The defendants, Robert Britt, his employer, Vintage Petroleum, Inc., and their insurer, Hartford Accident and Indemnity Company, answered and urged that the trial court incorrectly granted the JNOV with respect to the apportionment of fault.
We reverse in part, affirm in part, and render judgment. We affirm the trial judge's JNOV on the apportionment of fault and reverse the jury award. The general damages awards are increased to $150,000.00 and $30,000.00 for Jimmie and Donna Fitch, respectively, and Mr. Fitch's award for loss of future earning capacity is increased to $532,250.62.
The awards of $35,000.00 for past and future medical expenses and $80,000.00 for loss of past wages to Mr. Fitch are not the subject of this appeal and are, therefore, left intact. Similarly, the award of $6,700.89 to Mrs. Fitch for her past and future medical expenses remains undisturbed.

ISSUES
The issues presented for review are:
1) Whether the trial judge erred by granting a JNOV with respect to the jury's allocation of fault.
2) Whether the jury abused its discretion in its awards of general damages to Jimmie and Donna Fitch.
3) Whether the jury abused its discretion in its award for Jimmie's loss of future earnings.

FACTS
On August 9, 1988, Jimmie Fitch, his wife, Donna, three of their four children, and a family friend were on their way to Houston. Jimmie Fitch stopped at a stop sign on the exit ramp from Interstate 10 on Highway 13 in Crowley, Louisiana. Jimmie, unable to determine whether any northbound traffic was coming, moved his car forward a few feet. When he stopped a second time, Robert Britt rear-ended the Fitch vehicle.
State Trooper Leslie David Bernard investigated the accident, and corroborated the drivers' accounts. Trooper Bernard found Jimmie Fitch's vehicle heavily damaged, but driveable. No one at the scene of the accident required medical assistance. Fitch and his family continued on to Houston.
Because Fitch was sore the day after the accident, he attempted to see his regular family doctor, Dr. James Falterman. When Dr. Falterman was unavailable, he saw Dr. Barrow Bourgeois, an emergency room doctor with a specialty in family medicine. Dr. Bourgeois ordered x-rays, did not find any broken bones, and told Fitch he could return to work. Fitch returned to his job as an offshore pipeline welder, as the doctor recommended. He told the job foreman he had been in an accident, and was uncertain whether he could stay offshore for a full shift. His foreman assigned him to a less physically demanding welding position in the capping stall, rather than in the bead stall, which is the most physically demanding position in the welding line.
Fitch stayed offshore for three days, but he did not work a full twelve hour shift on any of those days. His arm became numb, and he was concerned his welds would not pass x-ray tests for accuracy. The barge was shut down because of bad weather, and he took the first boat in to see a doctor. Fitch was not involved in any accident while working offshore.
When he returned from offshore, Fitch saw Dr. Bourgeois who recommended ten days of rest to see if Fitch's neck would improve. When his neck did not improve, Fitch made an appointment with Dr. Stuart Phillips, head of orthopedic surgery at St. Charles General Hospital in New Orleans.
Fitch saw Dr. Phillips for the first time on September 13, 1988. Dr. Phillips found Fitch was having muscle spasms in his neck and experiencing pain when raising his arms. Dr. Phillips recommended a conservative treatment plan of heat, traction, rest, and medication to reduce swelling and to relieve pain. In December, Dr. Phillips found Fitch was responding to the treatment plan, and allowed him to return to work. After only one day of work, his symptoms returned.
Dr. Phillips scheduled a CAT scan and an MRI. These tests revealed Fitch had three injured cervical discs, 4-5, 5-6, and 6-7, *1000 which were pressing on nerve roots and causing his pain and numbness. In May and June, Dr. Phillips found Fitch was still in pain and having limited range of motion and muscle spasms. On September 20, 1989, after more than a year of unsuccessful conservative treatment, Dr. Phillips scheduled a fusion operation on Fitch's neck.
A successful fusion relieves pain, but the patient is left with a stiff neck, according to Dr. Phillips. He removed bone from Fitch's hip to replace the three damaged cervical discs. The operation was a partial success. Fitch has two solid fusions, and one fibrous union. A fibrous union is painful because the scar tissue contains nerves where the fusion is not solid.
Dr. Phillips said Fitch will always have pain from this fibrous union when he overdoes any activity. The fibrous union or nonunion also shows signs of neuroforaminal encroachment. Neuroforaminal encroachment occurs when spurs grow out of the neuroforamin and the spurs press on the nerve root. This problem causes permanent pain in Fitch's left arm. At the time of the trial, Fitch was often taking more than three Vicodin for pain relief a day, and then taking another prescription drug so that he could sleep.
Fitch is not a candidate for further surgery. The discs above and below the fusion sites have increased potential for future problems because of stress and motion on the remaining joints. Dr. Phillips rated Fitch's loss of function as 50% loss of function of his cervical spine, and 25% loss of function of his whole body under the American Medical Association guidelines. Fitch has permanent work restrictions; he has a limited range of motion, he cannot look up, look back, or work with his arms over his head. Fitch can only occasionally lift over 25 pounds.
According to Dr. Phillips, the car accident caused Fitch's injury. Fitch was comfortable before the accident, and worked in a physically demanding job as a pipeline welder. Fitch's broken nose and muscle strain in 1978 were only temporary problems, which Dr. Phillips attributed to normal wear and tear.
Dr. Phillips also treated Fitch's wife, Donna, for her injuries. When Donna's lower back pain and post traumatic migraine headaches did not respond to conservative treatment, Dr. Phillips ordered a CAT scan and an MRI. Donna's test results were normal. When Dr. Phillips performed a thermogram, he found multiple areas of inflammation in the ligaments holding her discs in place. Dr. Phillips diagnosed Donna's problem as fibromyositis, which is inflammation of muscles and fibrous tissue. Surgery will not improve Donna's condition. Donna's migraine headaches improved, but she continued to have muscle spasms in her lower back and limited motion. The symptoms of fibromyositis are muscle spasm and tenderness, which appear and disappear over time.
Dr. Phillips said Donna will experience symptoms related to her activity and weather changes for the rest of her life. While Donna can exercise moderately, she is not able to perform heavy manual labor because of her muscle inflammation. She cannot lift weights of over twenty five pounds, and she will have to take pain medication for an indefinite period.

LAW AND ANALYSIS

I. JNOV
In Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 832 (La.1991), the supreme court stated the criteria for determining when a JNOV is properly granted, and the standard for appellate review, as follows:
"In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e., do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to *1001 grant the motion and the jury verdict should be reinstated."
In light of the above facts, we find the trial judge did not err in granting JNOV with respect to the jury's allocation of fault. The facts and inferences establish that Jimmie Fitch's actions did not contribute to the accident.

II. ABUSE OF DISCRETION
The second and third issues concern the jury awards. Jimmie and Donna Fitch contend the jury awards for their general damages and for Jimmie's loss of earning capacity are too low. We agree.

A. General Damages
We cannot reconcile the objective findings of the medical expert witnesses and the awards given to Jimmie and Donna Fitch. Defendants argue that Mr. and Mrs. Fitch did not complain of injury at the time of the accident, the tests did not indicate Fitch's surgery was necessary, and Mr. Fitch either aggravated his condition or was injured by his return to work. The defendants claim the damages were supported by the evidence and within the jury's discretion. Defendants assert the jury found a substantial component of Mr. Fitch's damages were due to a subsequent, intervening cause.
Dr. James C. McDaniel testified for the defense. Dr. McDaniel saw Fitch in March and September, 1989. After the March physical exam, Dr. McDaniel concluded that Fitch had a full range of motion in his neck, had no muscle spasm, and was not in any acute distress at the time of the examination. When he examined Fitch, Dr. McDaniel found no evidence of any significant orthopedic or neurological abnormality. Mr. Fitch complained of a ball-like feeling at the base of his neck, but his physical exam was normal.
In September, Fitch told Dr. McDaniel his pain was worse, he was nauseated, dizzy, and he had numbness in his left hand and arm. Dr. McDaniel found no changes from the previous physical exam, but he did note some abnormalities on radiologist's reports from the CAT scan and MRI ordered by Dr. Phillips. According to Dr. McDaniel, Fitch did not require surgery.
Had the jury believed Dr. McDaniel's testimony, Fitch would not have received any compensation, because, in Dr. McDaniel's opinion, Mr. Fitch was not injured. Dr. McDaniel did not examine Donna.
We find no evidence was presented to the jury of any intervening cause of injury to Mr. Fitch. According to Dr. Phillips, the car accident caused the injuries to both Mr. and Mrs. Fitch. The rule is well settled that the treating physician's testimony is entitled to greater weight than the testimony of a physician who only examines a plaintiff for diagnosis. Chevalier v. L.H. Bossier, Inc., 617 So.2d 1278 (La.App. 3d Cir.1990), and cases cited therein.
The Louisiana Supreme Court recently reiterated the standard of review of jury awards. In Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the court made the following observation:
The standard for appellate review of general damage awards is difficult to express and is necessarily nonspecific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. Lemaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck [v. Stevens, 373 So.2d 498 (La.1979)] to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
623 So.2d at 1261.
We have already discussed the relevant objective medical evidence above. Jimmie *1002 Fitch was 32 years old at the time of the accident; Donna Fitch was 25. They have four children, ages eleven months to eight years old at the time of the accident. At the trial, Mr. Fitch testified his life was completely changed since the accident. Before the accident, Mr. Fitch's family life was active, he could provide financially for his family, and he enjoyed spending time with his wife and children. He loved to fish and hunt with his children, and attend their sports activities.
Since the accident, Mr. Fitch has tried to hunt and to fish a few times, but his neck hurts, and he becomes depressed because his life has changed drastically. Mr. Fitch is concerned about his ability to make a living; he attempted to attend college, and had to quit because of his pain. He is concerned about how he will support his family; he has had to take anti-depressant medication to deal with his anxiety.
Mrs. Fitch has pain when doing ordinary tasks like housework. She will have to take pain medication for an indefinite time. Her physical limitations and restrictions on the weight she can lift have affected her ability to manage all of her household duties and affairs.
The Fitchs' treating physician, Dr. Phillips, found their injuries were caused by the accident. Mr. and Mrs. Fitch now suffer with varying degrees of chronic pain, and further operations will not correct their problems. Considering the particular facts of this case, the jury did not give sufficient weight to Mr. and Mrs. Fitch's injuries, the degree of pain each has endured, the length of time over which they have suffered, the degree to which their activity level has been reduced, and the fact that they are both quite young.
Because we have found an abuse of discretion, we must determine an appropriate award by resorting to previous similar awards for guidance. The appropriate award is the lowest reasonable award the jury could have given had it not abused its discretion. Youn, above; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).
The Supreme Court recently clarified the Youn standard of appellate review in Ambrose v. New Orleans Police Department Ambulance Service, et al., No. 93-C-3099, 639 So.2d 216 (La.1994), stating:
"It was not our purpose in that case to mandate that the trial court's factual determinations cannot ever, or hardly ever, be upset. Although deference to the factfinder should be accorded, the court of appeal, and the Louisiana Supreme Court, nonetheless have a constitutional duty to review facts.... the court of appeal ... has every right to determine whether the trial court verdict was clearly wrong based on the evidence, or clearly without evidentiary support."
Our review of awards in cases in which the plaintiff has suffered similar injuries establishes the lowest possible award of general damages for Jimmie Fitch is $150,000.00 and for Donna Fitch is $30,000.00.

B. Loss of Earning Capacity
Mr. and Mrs. Fitch assign as error the jury's award of $90,000.00 for Mr. Fitch's loss of future wages or loss of earning capacity. Considering the individual circumstances of this case, we find this award is an abuse of discretion. Coco v. Winston Industries, Inc., supra; Reck v. Stevens, 373 So.2d 498 (La. 1979); Hoback v. KMart Corporation, 628 So.2d 1258 (La.App. 3rd Cir.1993), writ denied, 634 So.2d 397 (1994), and cases cited therein. We find the award which the jury made for loss of earning capacity is unreasonable and find the amount of $532,250.62 more closely compensates Jimmie Fitch for his loss of future wages and earning capacity.
Defendants contend Mr. Fitch's loss of earning capacity was inflated. Defendants also contend offshore welding jobs were scarce, and Mr. Fitch was not regularly employed. According to defendants, on the day of the accident, Mr. Fitch was unemployed and looking for work in Houston. These contentions are not supported by the record.
The defendant's expert economist, Dr. Kenneth Boudreaux, based his calculations of loss of earning capacity on an average of Mr. Fitch's income from 1983 to 1988. Dr. Boudreaux assumed Mr. Fitch's earnings were approximately $18,800.00 per year, prior to his accident and, after the accident, he would *1003 be able to earn approximately $23,000.00 per year. Dr. Boudreaux based Mr. Fitch's future earning projections on Fitch's return to college or training to be a draftsman. According to Dr. Boudreaux, Mr. Fitch's loss of earning capacity was approximately $40,000.00 to $42,000.00. This projection is for the three year period in which time he could be retrained as a draftsman, and then he could surpass his income as a welder.
The premises on which Dr. Boudreaux reaches his conclusions are incorrect. Mr. Fitch's loss of earning capacity should not have been determined by an average of a portion of his salary for the past five years.
This court has stated:
Earning capacity itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.
Veazey v. State Farm Mutual Auto Ins., 587 So.2d 5, 7 (La.App. 3rd Cir.1991) and cases cited therein.
Furthermore,
"... the full indemnification to which an injured party is entitled under Article 2315 (Jordan v. Travelers Insurance Co., 257 (La. 995, 245 So.2d 151 (1971)) includes damages for decreased earning capacity which is determined by deducting plaintiff's earning ability after the injury from his earning ability immediately prior to the injury rather than by deducting his income after the injury from his income prior to the injury. The Court of Appeal on original hearing emphatically rejected defendant's argument and said:
"Wages at time of injury are usually suggestive of the individual's future earnings. This is not an absolute unvarying rule. In many instances, changes in work and increase of earnings would be more probable. The law does not destine an injured party to his situation at the time of injury. It would be unrealistic and unjust to accept defendant's argument. In Edwards v. Sims, 294 So.2d 611 (La.App., 4th Cir.1974) it was said:
`... Moreover, loss of wages can properly be computed on the amount the plaintiff would in reasonable probability have been earning at time of trial, although he was earning less at the time of the accident. James v. State, 154 So.2d 497 (La.App., 4th Cir.1963).'" [Coco v. Winston Industries, Inc.] 330 So.2d [649] at 666 [(La.App., 4th Cir.1975)].
We believe that the foregoing passage from the Court of Appeal opinion on original hearing properly applies the governing legal principles."
Coco v. Winston Industries, Inc., 341 So.2d 332, 338-339 (La.1977). (Emphasis in original).
Dr. Boudreaux's calculations were based on the assumptions that Mr. Fitch's earning capacity would not exceed $23,000.00 per year and his drafting income would equal his welding income in three years. There is nothing in the record to substantiate these assumptions. Indeed, the defendants' other experts do not support this view.
Stephanie Chalfin was qualified as an expert in vocational rehabilitation. Ms. Chalfin testified that Mr. Fitch was an excellent candidate for rehabilitation based on either selective placement employment, because of his physical limitations, or for retraining in a vocational school program. His selective employment opportunities would pay minimum wage to about $5.50 per hour. If Mr. Fitch was retrained as a draftsman, then he would earn $6.00 to $7.00 per hour. As he gained more experience as a draftsman, he could make up to $9.00 per hour.
Significantly, defendants' vocational rehabilitation expert, Glenn Hebert, agreed that, before his injury, Mr. Fitch was capable of earning $50,000.00 to $70,000.00 per year as a pipeline welder. According to Hebert, Mr. Fitch's loss of earning capacity would be with him until he retires. In Hebert's opinion, Mr. Fitch could work as a welding inspector, but conceded he would be limited in the types of inspection jobs he could perform.
*1004 Thus, Dr. Boudreaux's calculations and ultimate conclusions on Mr. Fitch's loss of future earning capacity suffered from a lack of an evidentiary base. If an opinion is based on facts not supported by the record, it may be rejected. Meany v. Meany, 639 So.2d 229 (La.1994). Indeed, Meany stated that "if expert testimony given in response to hypothetical questions is predicated on a statement of unproven facts, it has no probative value and should not affect the outcome of the case." Id. at 236.
Among the factors to be considered in determining the amount for future economic loss are the plaintiff's physical condition prior to the accident, his past work record as to consistent employment, his prior earnings, and the probability the plaintiff would have continued to earn wages over the remainder of his work life, as in the past, had he not been injured. Hoback v. KMart Corporation, supra.
Mr. Fitch's physical problems were caused by the car accident. Dr. Phillips testified Mr. Fitch was unable to return to his former job as a pipeline welder. He has permanent physical restrictions, as discussed above. He cannot return to any type of manual labor, and will have to be retrained. Even upon retraining, Mr. Fitch's employment capacity may be limited by his pain and subsequent use of pain medication.
Mr. Fitch's former supervisor at B & I Welding, Charles L. Jones, said Mr. Fitch had been an excellent worker before he was injured. Jones said Mr. Fitch was a very dependable and skilled welder; he was one of the first men called to work. Jones testified men employed at Mr. Fitch's former company with similar experience, skill, and work habits were making $50,000.00 to $70,000.00 per year. Men who work overseas for B & I are paid approximately $10,000.00 a month. Jones also said skilled workers with Mr. Fitch's qualifications are in demand.
Dr. G. Randolph Rice, an expert economist, calculated Mr. Fitch's average annual earnings as $29,555.95, based on Mr. Fitch's tax returns from 1984 through 1988. Dr. Rice based his average on the amount Fitch earned in 1988, ($18,705.27) up until the time of the accident and annualized that figure to estimate $29,555.95 for 1988. His reported income in 1987 was $29,335.18.
In calculating loss of future wages or future earning capacity, Dr. Rice figured Mr. Fitch's future work life expectancy was 23.7 years, from the date of the trial. To calculate replacing Fitch's loss of future income, Dr. Rice estimated the amount of money needed today to duplicate the future income maximum capacity of $70,000.00.
Based on his work life expectancy of 23.7 years, Mr. Fitch's loss of future income at $70,000.00 per year is $1,253,575.00.
If his future earnings were $50,000.00 (the minimum amount suggested by the plaintiff's expert and agreed to by the defendant's expert), then his loss of future income would be 71.43% of $1,253,575.00, or $895,428.62. If we then subtract $363,178.00, which represents Mr. Fitch's earnings at $11.00 per hour at a fulltime job, (the amount suggested by the defendant's expert), then his loss of future earning capacity is $532,250.62.
The jury abused its discretion in awarding only $90,000.00. The lowest reasonable amount the jury could have awarded Mr. Fitch is $532,250.62.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed in its apportionment of fault to defendant Britt but reversed with respect to the awards of general damages and loss of future earning capacity to Jimmie Fitch and the award of general damages to Donna Fitch.
Judgment is rendered awarding Jimmie Fitch the sum of $150,000.00 in general damages and $532,250.62 in loss of future earning capacity, with legal interest from the date of judicial demand until paid.
Judgment is also rendered awarding Donna Fitch the sum of $30,000.00 in general damages, with legal interest from the date of judicial demand until paid.
In all other respects, the judgment of the trial court shall remain undisturbed.
Defendants are assessed with the costs of appeal.
*1005 AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.