STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-685

PATRICIA A. BUSH

VERSUS

AVOYELLES PROGRESS ACTION
COMMITTEE AND LOUISIANA WORKERS'
COMPENSATION CORPORATION

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2
PARISH OF RAPIDES, NO. 05-08013
HONORABLE JAMES L. BRADDOCK,
WORKERS' COMPENSATION JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and J. David Painter, Judges.

**AFFIRMED.**

Robert A. Mahtook, Jr.
Marc D. Moroux
Mahtook & LaFleur
P. O. Box 3089
Lafayette, Louisiana 70502-3089
Counsel for Defendant-Appellant:
        Avoyelles Progress Action Committee and
        Louisiana Workers' Compensation Corporation


Norris J. Greenhouse
Greenhouse Law Office, L.L.C.
P. O. Box 444
Marksville, Louisiana 71351
Counsel for Plaintiff-Appellee:
        Patricia A. Bush

**PAINTER, Judge.**

Defendants, Avoyelles Progress Action Committee and Louisiana Workers' Compensation Corporation (LWCC), appeal the judgment of the Workers' Compensation Judge (WCJ) ordering that Defendants authorize a surgery recommended by Claimant's treating physician, finding that Defendants' behavior in refusing to authorize the surgery was arbitrary and capricious, and awarding penalties in the sum of $2,000.00 and attorney's fees in the sum of $5,000.00. For the following reasons, we affirm the judgment of the WCJ in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

Claimant, Patricia A. Bush (Bush), was employed by Avoyelles Progress Action Committee as Assistant Executive Director. On May 14, 2003, as part of her employment duties, Bush was attending a seminar at Argosy Casino in Baton Rouge, Louisiana. While there, she slipped and fell in the ladies' room and injured her neck, right arm, lower and upper back, and right hip. She reported the accident to the Executive Director of Avoyelles Progress Action Committee and to an employee of the conference center. She was immediately seen by an EMT who applied an ice pack to her right wrist. Bush stayed at the conference but reportedly developed pain in her upper back later that night. Bush continued to work after the accident.

On May 16, 2003, after returning home from the conference and continuing to have pain and swelling, Bush went to the emergency room at Avoyelles Hospital and complained of pain to her right wrist and upper and mid-back around her shoulders. X-rays were taken, and she was given pain medication and instructed to follow up with her family physician. She saw Dr. Bryan C. McCann, her general practitioner, on May 21, 2003. She related the details of the slip and fall and her complaints of

1

pain. Dr. McCann noted that he had treated her for injuries to her neck and right shoulder from an automobile accident in November of 2000 but that she had been well since he last saw her in November of 2001. Dr. McCann treated her with injections of anti-inflammatory medications and ordered an MRI of the thoracic spine. The MRI was performed on May 22, 2003, and was interpreted as showing mild degenerative disc changes from T2 through T6 with slight increased thoracic kyphosis (also referred to as "humpback"). Dr. McCann continued treating her conservatively for the next several months with injections and massage therapy.

On December 20, 2003, Bush sought treatment from Dr. Yvel Moreau, an orthopedist, after she reportedly developed severe spasm in her mid back which caused her to fall and fracture her right elbow. Dr. Moreau treated the elbow fracture and referred Bush to Dr. Louis C. Blanda, an orthopedic surgeon, for treatment of her neck and back. Dr. Moreau, however, ordered an MRI of the cervical spine before Bush saw Dr. Blanda. This MRI was performed on January 16, 2004 and was interpreted as showing moderately severe cervical spondylosis at C4-5 with moderate bilateral bony neuroforaminal narrowing as well as moderate cervical spondylosis at C5-6 with mild bilateral bony neuroforaminal narrowing at that level. Dr. Blanda indicated that spondylosis is a degenerative condition which would have pre-existed the May 14, 2003 accident.

Dr. Blanda first saw Bush on February 17, 2004, and she complained of injury and pain in her lower back and neck. There was some spasm on palpation in the neck. Dr. Blanda reviewed the films of the MRI of the cervical spine taken January 16, 2004. Dr. Blanda saw Bush several times over the following months. During this time, she complained of numbness in her hand and continued to attend physical

2

therapy. On May 18, 2004, EMG/NCV of the right upper extremity were performed and interpreted as "essentially normal." EMG/NCV of the bilateral upper extremities performed on November 30, 2004, indicated low grade physiologic C6 changes bilaterally with a right C7 component. Through September 28, 2004, Bush's complaints of numbness increased and began to involve both arms. Dr. Blanda ordered further EMG testing, which was done in December of 2004. Dr. Blanda related that this testing showed that the numbness was coming from the neck.

Defendants sought a second opinion from Dr. G. Gregory Gidman. Dr. Gidman examined Bush on November 23, 2004. Dr. Gidman conducted an examination of the cervical spine, upper extremities, and lumbar spine. He also ordered x-rays of the pelvis, thoracic spine, and lumbar spine, which he interpreted as normal. He also reviewed reports from the MRI of the cervical spine performed on January 16, 2004 and from the MRI of the thoracic spine performed on May 22, 2003. Based on his examination, Dr. Gidman was of the opinion that no surgical intervention was necessary and that there was no need for any repeat electrical studies of the upper extremities. He recommended conservative treatment consisting of home therapy, home cervical traction, nonsteroidal anti-inflammatory medication, and mild analgesics. However, Dr. Gidman did assign a ten percent whole body impairment from the subject injury.

Defendants then requested an IME, and the Office of Workers' Compensation appointed Dr. Thad S. Broussard to perform the examination. Dr. Broussard saw Bush on February 22, 2005. Dr. Broussard reviewed the reports of the radiographic studies but not the films themselves. Based on his examination and the history of contusion and sprain of the cervical and lumbar spine, Dr. Broussard's impression

3

was that Bush was suffering from spondylosis but that she had reached maximum medical improvement. Dr. Broussard also indicated his opinion was that there was nothing in the records that he had reviewed at that time to indicate that surgery was required; however, he did state that it would be malpractice for a treating physician not to review any films prior to making a recommendation as to surgery. Dr. Broussard also indicated that if the symptoms worsened, there might be some indication of progression such that Bush would be considered a surgical candidate.

Dr. Blanda ordered a second MRI of the cervical spine, which was performed on May 23, 2005, and was interpreted as showing a subluxation (or forward slip) at C4-5 with central disc protrusion . Dr. Blanda testified in his deposition that this may or may not have been present when the MRI of the cervical spine dated January 16, 2004 was taken. Dr. Blanda specifically ordered that the May 2005 MRI be taken with a stronger machine. Further, in Dr. Blanda's opinion, the first MRI was taken soon after the injury and it can take months for the "full picture" to develop due to the progressive protrusion or herniation of the discs. Dr. Blanda also recommended a cervical myelogram, but approval was denied based on Dr. Gidman and Dr. Broussard's opinions that Bush was not a surgical candidate. On June 7, 2005, based on his diagnosis of an unstable disc herniation at C4-5 and spondylosis and central disc bulging at C5-6, Dr. Blanda then recommended a three level surgery.

Based on the second opinion from Dr. Gidman and the IME report from Dr. Broussard, Defendants refused to authorize the surgery recommended by Dr. Blanda. None of the subsequent studies were provided to either Dr. Gidman or Dr. Broussard.

Bush continued to work and filed a petition for authorization of medical treatment and for penalties and attorney's fees on November 29, 2005. Following

4

trial, the WCJ rendered judgment in favor of Bush, ordering Defendants to authorize the surgery recommended by Dr. Blanda. The judgment also awarded penalties in the amount of $2,000.00 based on the finding that Defendants' conduct in refusing to authorize the surgery was arbitrary and capricious. Attorney's fees in the amount of $5,000.00 were also awarded. The WCJ, however, denied Bush's claim for payment of a Massage Therapy Clinic Bill in excess of $750.00 as well as her claim for penalties and attorney's fees in connection therewith. Defendant appeals, asserting that the WCJ was manifestly erroneous in its conclusions that surgery was necessary and that the necessity for surgery was related to the work-related accident as well as in its assessment of penalties and attorney's fees. Bush has neither answered the appeal nor filed her own appeal. Finding no manifest error in the WCJ's finding regarding the medical necessity of surgery or in the imposition of penalties and attorney's fees, for the reasons that follow, we affirm the judgment in its entirety.

**DISCUSSION**

*Standard of Review*

"A workers' compensation judge's finding as to whether a requested medical treatment is necessary is factual in nature." *Figgins v. Wal-Mart*, 06-806, p. 3 (La.App. 3 Cir. 11/15/06), 945 So.2d 153, 156, *writ denied*, 06-2977 (La. 2/16/07), 949 So.2d 421. Accordingly, our review in this case is governed by the manifest error standard of review. *Smith v. Louisiana Dep't of Corr.*, 93-1305 (La. 2/28/94), 633 So.2d 129. We are also guided by the principal that "where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Thornton v. Louisiana Plastic*

5

*Indus., Inc.*, 39,105, pp. 5-6 (La.App. 2 Cir. 12/15/04), 889 So.2d 1226, 1229. We must review the record as a whole, and if the WCJ's findings are reasonable in light of that record, we may not reverse. *Id.*

*Medical Necessity of Cervical Surgery*

Defendants contend that Bush failed to carry her burden of proving the necessity of the surgery at issue or, at the very least, left the evidence in equipoise regarding the subject. Again, Defendants rely upon the second opinion of Dr. Gidman and the IME performed by Dr. Broussard as well as evidence that Bush suffered a prior neck injury. Defendants further rely upon the deposition testimony of their expert witness, Dr. Mark Tyler Stephan, a diagnostic radiologist. Dr. Stephan was asked to compare the cervical MRIs obtained in 2001, 2004, 2005, and 2006. Dr. Stephan did not examine Bush. Dr. Stephan testified that there was no progression or significant changes of the abnormalities at the C4-5 and C5-6 levels when comparing the 2004 and 2005 MRIs. Defendants contend that Dr. Stephan's testimony directly refutes Dr. Blanda's recommendation for surgery. Based on our review of the record in its entirety, we disagree.

In order to recover the cost of the surgery, Bush must prove, by a preponderance of the evidence, that the expense is reasonably necessary for the treatment of a medical condition caused by a work-related injury. *Steven v. Liberty Mut. Ins. Co.*, 509 So.2d 720 (La.App. 3 Cir. 1987). It is also well settled that greater weight is ordinarily given to the testimony of a treating physician as opposed to that of a physician who examines the plaintiff for diagnostic purposes only. *Fitch v. Vintage Petroleum, Inc.*, 94-346 (La.App. 3 Cir. 11/2/94), 652 So.2d 998, *writ denied*, 94-438 (La. 3/30/95), 651 So.2d 847. This is because the treating physician is more

6

likely to know the patient's symptoms and complaints due to repeated examinations and sustained observations. Moreover, causation is not necessarily a medical conclusion, and the ultimate determination as to whether a plaintiff has proved the causation of his disability is made by the courts and not by medical experts. *Martin v. H. B. Zachry Co.*, 424 So.2d 1002 (La.1982).

In this case, Dr. Gidman and Dr. Broussard, both of whom saw Bush only once and only for diagnostic purposes at the insistence of Defendants, found no necessity for surgery. Bush's treating physician, Dr. Blanda, recommended surgery after the examinations conducted by Dr. Gidman and Dr. Broussard and after further testing was done. Despite the recommendation for surgery and additional testing, Defendants did not refer Bush back to Dr. Gidman or Dr. Broussard. We agree with the WCJ that Defendants cannot "blindly rely on a previous beneficial sounding report when they gather subsequent information that indicates there's a continuing problem."

Defendants further contend that Bush failed to meet her burden of proving that the need for surgery was related to the subject accident rather than to a pre-existing condition. We are mindful, however, that even if a pre-existing condition exists, workers' compensation benefits are still available if the work-related accident aggravates or accelerates it. *Guidry v. Serigny*, 378 So.2d 938 (La.1979). Evidence that Bush may have been treated for pre-existing neck pain or that the spondylosis pre-existed the subject accident does not prove the absence of a connection between the accident and the need for surgery. *See Hosli v. Rent-A-Center, Inc.*, 06-1466 (La.App. 4 Cir. 4/11/07), 957 So.2d 207, *writ denied*, 07-1018 (La. 8/31/07), 962 So.2d 439.

7

Dr. McCann testified that he treated Bush for injuries sustained in an automobile accident in November of 2000 but that he stopped treating her for those complaints on November 21, 2001 and did not see her again until May 21, 2003 (just days after the subject accident). Dr. McCann was of the opinion that the complaints he treated Bush for were caused by the subject accident.

There was some evidence that Bush had about forty-eight, intermittent chiropractic treatments between June of 1997 and December of 2002 with a diagnosis of cervical neuritis by the chiropractor. Even considering this, Dr. Blanda was of the opinion that if she didn't have the symptoms before accident and then they developed right after, it was related to the accident. Furthermore, when asked whether the intermittent complaints before the accident compared with constant progressive complaints after the accident made any difference, Dr. Blanda responded that this would fit with his conclusion that Bush probably had an aggravation or worsening of the pre-existing problems secondary to this accident. Even Dr. Broussard testified that, based on history, the accident in question would have caused Bush to become symptomatic. As to causation, Dr. Stephan indicated that he would defer to other physicians who had examined the patient. Dr. Allen S. Joseph, a neurosurgeon who examined Bush on July 18, 2006, testified that when he reviewed the x-rays, he saw the sort of expected progression of arthritis rather than changes from trauma but that the accident in question accelerated the progression.

After considering all of the above-mentioned testimony of all the physicians, reviewing all of the medical reports and the record in its entirety, and considering the sequence of events, we find that there is a reasonable factual basis for the WCJ's determination that the surgery recommended by Dr. Blanda is necessary, is causally

8

connected to the work-related accident, and is to be authorized by Defendants. We cannot say that the WCJ's decision to accept the testimony of Dr. Blanda over that of Dr. Gidman and Dr. Broussard was manifestly erroneous. Therefore, we affirm the WCJ's rulings in these respects.

*Penalties and Attorney's Fees*

Defendants also assert that the WCJ committed manifest error in awarding penalties and attorney fees, contending that they reasonably controverted Bush's demand for the recommended surgery. The determination as to the imposition of penalties and attorneys fees is a question of fact, and the WCJ's finding in this regard will not be disturbed on appeal absent manifest error. *Wiltz v. Baudin's Sausage Kitchen*, 99-930 (La.App. 3 Cir. 6/19/00), 763 So.2d 111, *writ denied*, 00-2172 (La. 10/13/00), 771 So.2d 650. In order to determine whether an employer or insurer has fulfilled its duty to furnish medical benefits, we must consider whether the employer or insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the workers' compensation claimant. *Gibson v. Dynamic Indus., Inc.*, 96-1605 (La.App. 3 Cir. 4/2/97), 692 So.2d 1320.

Defendants cite only a scant amount of evidence in an effort to show that they reasonably controverted Bush's request for surgery. Defendants point to Dr. Gidman's second opinion and to Dr. Broussard's independent medical examination. The opinions of these two physicians are discussed in great detail above, and we again note that these physicians saw Bush before Dr. Blanda made his recommendation for surgery and were not provided with reports of testing performed subsequent to their examinations. Defendants also rely on assertions that Bush suffered from a pre-existing condition and that her present condition was inevitable

9

based thereon. However, as we have said, a pre-existing condition alone does not foreclose receipt of workers' compensation benefits, and there was testimony that the subject accident aggravated and accelerated her pre-existing condition.

For these reasons, we agree with the WCJ that the Defendants did not reasonably controvert Bush's claim. Accordingly, the workers' compensation judge did not err in awarding penalties and attorneys fees in favor of Bush. We affirm the WCJ's award of $2,000.00 in penalties and $5,000.00 in attorney's fees.

**DECREE**

For the reasons stated above, the WCJ's judgment is affirmed in its entirety. Costs of this appeal are assessed to Defendants-Appellants.

**AFFIRMED.**