# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 17-594


**LAURA CARTER**

**VERSUS**

**IBERIA PARISH SCHOOL BOARD, ET AL.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 9
PARISH OF IBERIA, NO. 15-02175
ELIZABETH CLAIRE LANIER, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*


**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and John E. Conery, Judges.


**AFFIRMED.**


**William Stevens Bordelon**
**David John Shea**
**Bordelon & Shea, LLP**
**P. O. Drawer 2317**
**Houma, LA 70360**
**Telephone: (985) 876-3377**
**COUNSEL FOR:**
    **Defendants/Appellees - Iberia Parish School Board and Gulf South Risk**
    **Services**

**David Christopher Whitmore**
**Blake Jones Law Firm, LLC**
**701 Poydras Street - Suite 4100**
**New Orleans, LA 70139**
**Telephone: (504) 525-4361**
**COUNSEL FOR:**
    **Plaintiff/Appellant - Laura Carter**

**THIBODEAUX, Chief Judge.**

Plaintiff, Laura Carter, appeals a judgment in favor of Defendant, Iberia Parish School Board, et al. (hereafter "IPSB"), determining that Ms. Carter did not sustain a cervical injury causally connected to her work-related incident. Ms. Carter alleges that the trial court improperly admitted the cumulative testimony of two physicians in the same specialty. Furthermore, Ms. Carter asserts that the trial court erred in failing to impose penalties and award attorney fees when there was a delay of four years in her medical care for the cervical injury. We affirm the judgment in favor of IPSB.

## I.

## ISSUES

We must determine whether the trial court improperly allowed the employer to use two physicians in the same field of practice and whether this evidence was cumulative. This court must also determine whether the trial court erred in its determination that the employee did not suffer a cervical injury that was causally connected to her work-related injury. If we find the trial court erred, we must determine whether the trial court should have awarded the employee penalties and attorney fees.

## II.

## FACTS AND PROCEDURAL HISTORY

Ms. Carter was employed by IPSB and worked as a cook at Dodson Elementary School. On May 4, 2011, Ms. Carter was lifting a heavy food chopper with two co-workers. Ms. Carter sustained a low back injury when the co-workers

released the food chopper and Ms. Carter had to bear all the weight of the equipment.

Ms. Carter sought medical care at the Occupational Medicine Clinic ("OMC") on the day of the incident. She also went to the emergency room at Dauterive Hospital later in the day complaining of low back pain. Ms. Carter returned to work for the remainder of the school year. Ms. Carter went back to OMC on July 27, 2011, for an annual physical, but did not receive any medical treatment in May, June, or for the majority of the month of July of 2011 for her low back complaints.

Ms. Carter sought treatment from Dr. John Cobb, an orthopedic surgeon at the Lafayette Bone & Joint Clinic in Lafayette, Louisiana. She had her first office visit with Dr. Cobb on August 3, 2011, only complaining of low back pain. Ms. Carter also saw Dr. Cobb on August 31, 2011. Dr. Cobb ordered diagnostic testing and epidural steroid injections, which were performed by Dr. Jindia on December 1, 2011 and January 11, 2012, at Lafayette Surgical Specialty Hospital. Dr. Cobb passed away on December 4, 2011, and Ms. Carter subsequently saw Dr. Cobb's partner, Dr. Louis Blanda, on December 28, 2011 and January 4, 2012.

During her visits with Dr. Jindia, Ms. Carter completed pain drawings on which she only indicated low back pain. Ms. Carter was also seen by Dr. John Sledge, with the first visit occurring on February 1, 2012. Dr. Blanda recommended low back surgery in March 2012. Ms. Carter saw Dr. Sledge again on April 2, 2012, and he recommended a microdiscectomy at L5-S1 level of the lumbar spine. Ms. Carter also went to twelve physical therapy sessions at the

Southern Spine Institute. Ms. Carter admitted that she made no complaints regarding her cervical pain to her physical therapists.

At the request of IPSB, Ms. Carter saw Dr. Douglas Bernard on March 12, 2012. Dr. Bernard opined that lumbar surgery was contraindicated. Furthermore, Dr. Bernard noted that he believed that Ms. Carter exhibited signs of "exaggeration," "unphysiologic numbness," and that Ms. Carter "self-limited" and gave an "unreliable effort" during two Functional Capacity Evaluations (FCEs). Again, when Ms. Carter saw Dr. Bernard she only mentioned her low back pain.

Ms. Carter also complained of right knee pain for which the employer authorized medical treatment. Dr. Sledge ordered an MRI of Ms. Carter's lumbar spine, which revealed a herniated disc at L5-S1. After conservative treatment failed, Dr. Sledge performed the L5-S1 microdiscectomy on January 8, 2013.

Dr. Sledge's notes from June 4, 2012 reflect the first time that Ms. Carter mentioned neck pain. Dr. Sledge's notes state, "[S]he also indicates to me that on May 8, 2012, she experienced [a] rather sudden onset of neck and right arm pain, which became severe necessitating a trip to the emergency room at Dauterive Hospital on May 9, 2012." Dr. Sledge requested a cervical MRI but the request was denied by the IPSB because IPSB believed the cervical injury was not causally connected to the May 4, 2011 work accident. Dr. Sledge wrote a report on January 27, 2014, opining that he believed that Ms. Carter's cervical injury was the result of lifting the heavy food processor. Dr. Sledge noted that although her back and leg were worse at the time of the incident, her cervical injury "escalated over time." The cervical spine MRI performed on May 29, 2014, "showed disc protrusions at C4-5 and C5-6, with a larger right-sided disc extension with annular fissure at C6-7."

3

IPSB refused treatment for Ms. Carter's cervical injury. IPSB asserted that it should not have to pay for the cervical injury when Ms. Carter not only failed to complain of the injury for thirteen months after the work incident, but also when Ms. Carter specifically denied a cervical injury or neck pain on numerous doctors' visits and on pain diagram forms during these appointments. Ms. Carter claims she complained of the cervical injury to Dr. Cobb in August of 2011. Dr. Sledge testified that patients with two injuries often "only complain about the most severe of them . . . ." Additionally, Ms. Carter testified that there was no intervening cause for her cervical injury.

Ms. Carter filed a disputed claim for compensation, LWC Form 1008, on April 9, 2015, alleging there was a dispute regarding her cervical injury and treatment. IPSB filed responsive pleadings and reconventional demand, asserting that Ms. Carter's cervical injuries and complaints were not compensable under the Workers' Compensation Act because the injury was not related to her work accident. After an oral motion by IPSB, the trial court dismissed the reconventional demand. Ms. Carter filed a motion in limine to exclude Dr. Christopher Cenac Sr.'s testimony because IPSB chose Dr. Bernard as the orthopedic specialist. Ms. Carter asserted that if Dr. Cenac was permitted to testify, then Dr. Bernard's testimony should have been excluded. IPSB opposed Ms. Carter's motion in limine, stating that Dr. Bernard "has important and relevant information . . . [and] he observed her inconsistent responses and inappropriate conduct" as her examining doctor. IPSB further contended that Dr. Cenac's report prepared using the medical records that IPSB sent to him for his review should be admitted. IPSB asserts that Ms. Carter provided "no objective evidence to substantiate her subjective complaints."

At trial, IPSB sought to introduce a report by Dr. Cenac. Ms. Carter made the same objection at trial about the introduction of the testimony and it was overruled. The trial court reasoned that the testimony of both physicians was not cumulative medical testimony because under La.R.S. 23:1124.1, the "introduction of the testimony of more than two physicians would be cumulative, however the worker's comp[ensation] judge, on its own motion, may order that any claimant appearing before it be examined by any other physicians."

Both Dr. Bernard and Dr. Cenac testified at trial. Dr. Sledge was also deposed regarding his examination and treatment of Ms. Carter. Dr. Sledge noted Ms. Carter made no mention of her cervical complaints until June 2012. Dr. Sledge's notes from his June 4, 2012 office visit with Ms. Carter describe Ms. Carter's cervical complaints as a "sudden onset," further implying that Ms. Carter made no previous mention of such symptoms to Dr. Sledge.

The trial court accepted Dr. Cenac as an expert in orthopedic surgery. Dr. Cenac reviewed Ms. Carter's records at IPSB's request, but he did not examine Ms. Carter, nor did he provide her with any treatment. Dr. Cenac only reviewed Ms. Carter's records when preparing his report, which posited that Ms. Carter's cervical injury was not causally related to the work-related injury. Dr. Cenac testified that in his experience in private practice, patients tend to over-report their symptoms rather than minimize their symptoms, especially when the injury is on a weight-bearing joint like the spine. In preparation for his testimony, Dr. Cenac reviewed the MRI report from the MRI performed in May 2014, rather than the MRI itself. Dr. Cenac opined that Ms. Carter's disc osteophyte complex occurs over time and stated that her MRI revealed degenerative changes but did not reveal a traumatic cervical spine injury. Further, Dr. Cenac noted that if Ms. Carter's

5

cervical injury was pre-existing and was aggravated by her work accident, then Ms. Carter would have experienced symptoms shortly thereafter. Additionally, Dr. Cenac disagreed with Dr. Sledge's deposition testimony that Ms. Carter had a disc herniation. Rather, Dr. Cenac believed that Ms. Carter had a bone spur that occurs when the body tries to bridge the gap as the annulus grows out, forming over many years.

Dr. Bernard also reviewed Ms. Carter's medical records at IPSB's request. Dr. Bernard originally evaluated Ms. Carter in March of 2012. Dr. Bernard's testimony heavily focused on his opinion that Ms. Carter was a poor candidate for lumbar surgery. In regards to Ms. Carter's cervical injury, Dr. Bernard testified that he believed that "it's more probable than not that [Ms. Carter] wouldn't have hurt her neck" by lifting and bearing all the weight of a heavy food chopper.

The trial court rendered a judgment in favor of IPSB. Ms. Carter filed this devolutive appeal on April 25, 2017.

III.

**STANDARDS OF REVIEW**

"[A] trial court's factual findings will not be upset absent manifest error . . . upon *there being evidence before the trier of fact which furnishes a reasonable factual basis for the trial court's finding.*" *Frederick v. Woman's Hosp. of Acadiana*, 626 So.2d 467, 472 (La.App. 3 Cir. 1993), *writ denied*, 93-2991 (La. 2/4/94), 633 So.2d 169 (citing *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). "Whether the claimant has carried her burden of proof and whether testimony is credible are questions of fact to be determined by the OWC [Office of

6

Workers' Compensation] hearing officer." *Iberia Medical Center v. Ward*, 09-2705, p. 14 (La. 11/30/10), 53 So.3d 421, 431 (citing *Buxton v. Iowa Police Dept.*, 09-520, p. 18 (La. 10/29/09), 23 So.3d 275). "The determination of whether an employer should be cast with penalties and attorney fees in a workers' compensation case is essentially a question of fact and subject to the manifest error/clearly wrong standard of review." *Simmons v. LUBA Workers' Comp.*, 16-523, p. 10 (La.App. 3 Cir. 11/2/16), 206 So.3d 397, 405 (citing *Reed v. Abshire*, 05-744 (La.App. 3 Cir. 2/1/06), 921 So.2d 1224).

IV.

## LAW AND DISCUSSION

This court must first address whether the trial court improperly allowed IPSB to utilize two physicians in the same field of practice under La.R.S. 23:1124.1. Ms. Carter alleges the trial court erred when it allowed the admission of the testimony of two orthopedic surgeons, which she claims was cumulative. Ms. Carter argues that if a party can allow a physician who is a specialist in the same field to undertake a records review and then testify, the party is skirting the statutory rule for cumulative testimony from two physicians in the same field. IPSB asserts that both physicians were allowed to testify at trial because each physician offered a different perspective, and if Ms. Carter could depose Dr. Sledge, then IPSB should be able to submit Dr. Cenac's testimony.

Under La.R.S. 23:1121(B)(2)(b):

> When the employee is specifically directed to a physician by the employer or insurer, that physician may also be deemed as the employee's choice of physician, if the employee has received written notice of his right to select one treating physician in any field or specialty, and then chooses to select the employer's referral as his

7

treating specialist after the initial medical examination as signified by his signature on a choice of physician form.

There is a statutory limitation on testimony. The testimony at trial was still within this limitation. La.R.S. 23:1124.1 (emphasis added) reads:

> Neither the claimant nor the respondent in hearing before the workers' compensation judge shall be permitted to introduce the testimony of **more than two physicians** where the evidence of any additional physician would be cumulative testimony. However, the workers' compensation judge, on his own motion, may order that any claimant appearing before it be examined by other physicians.

The trial court determined that the testimonies of both Dr. Cenac and Dr. Bernard could be admitted under La.R.S. 23:1124.1 because the language of the statute denotes "no more than two physicians" and the testimony of both would not be cumulative. We find that the trial court did not err in the admission of the testimony from both physicians.

In *Frederick*, 626 So.2d at 472, this court wrote:

> Essentially the same concerns articulated for giving latitude to trial judges in their factual findings justify leaving largely to their discretion the admissions of cumulative evidence, *Gormley v. Grand Lodge of State of Louisiana*, 503 So.2d 181 (La.App. 4 Cir.), [writ denied], 506 So.2d 1227 (La.1987); *Varnell v. Serv. Merch. Co., Inc.*, 613 So.2d 1043, 1044 (La.App. 3 Cir. 1993), and in giving them 'great discretion' in deciding which witnesses are qualified as experts, the breadth and scope of expert testimony, and the probative value of expert testimony, *Armstrong v. Lorino*, 580 So.2d 528, 531 (La.App. 4 Cir.), [writ denied], 584 So.2d 1166 (La.1991).

In *Frederick*, this court found that the trial court did not abuse its discretion when it allowed two pediatric neurologists' testimonies at trial in a medical malpractice action. This court found that the trial judge correctly admitted the cumulative expert testimony "as each one's testimony added dimensional

perspective to the testimony of the other," because they had different positions as a hospital administrator and private practitioner even though the physicians worked in the same specialty. *Id.* at 472-73. Further, we found the parties were afforded the opportunity to "cross-examine opposing witnesses and present expert testimony supporting their case." *Id*. at 473. Accordingly, this court did not find that "the probative value of the expert testimony provided by the defendants was outweighed, let alone ***substantially*** outweighed, by any of the concerns articulated in [La.Code Evid.] art. 403. *Id*.

The court adopted a four-part inquiry from *Adams v. Chevron, U.S.A., Inc.*, 589 So.2d 1219, 1233 (La.App. 4 Cir. 1991), *writ denied*, 592 So.2d 414, 415 (La.1992), in which the fourth circuit accepted the United States Court of Appeals for the Fifth Circuit's interpretation of Federal Rule of Evidence 403 in *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106 (5th Cir. 1991). When determining the admissibility of expert testimony the court looks to:

> (1) [W]hether the witness is qualified to express an expert opinion, (2) whether the facts upon which the expert relies are the same type as are relied upon by other experts in the field, (3) whether in reaching his conclusion the expert used well-founded methodology, and (4) assuming the expert's testimony passes these tests, whether the testimony's potential for unfair prejudice substantially outweighs its probative value under the relevant rules. [*Christophersen*, 939 F.2d 1106.]

*Frederick*, 626 So.2d at 470-71.

In *Frederick*, 626 So.2d 467, this court expanded "the fourth inquiry to include consideration of the cumulative nature of expert testimony." *Clay v. Int'l Harvester Co.*, 95-1572, p. 6 (La.App. 3 Cir. 5/8/96), 674 So.2d 398, 403.

In *Clay*, we held that the trial court did not err when it allowed two expert engineers to testify because their testimonies were not "redundant or repetitive." 674 So.2d at 402-03. At issue, under the expanded fourth factor of the *Adams* factors, was whether the testimony was cumulative. This court held that, although portions of the testimony were cumulative, it "was relevant and, under La.Code Evid. art. 702, met the requirement that it aid the factfinder in understanding the evidence or resolving a disputed fact issue." *Id.* at 405. Thus, this court found the experts added "dimensional perspective" because the experts had different "academic and professional backgrounds" even though they "express[ed] similar opinions on the same subjects." *Id.*

Here, like in *Frederick* and *Clay*, the issue hinges on the fourth *Adams* inquiry—whether the admission of two experts' testimonies was cumulative or whether its "potential to unfairly prejudice substantially outweighs its probative value." *Frederick*, 626 So.2d at 471. The trial court permitted the testimonies of Dr. Cenac, Dr. Bernard, and Dr. Sledge.

Ms. Carter asserts that the testimony of Dr. Cenac should be excluded because the statute limits the introduction of testimony by more than one physician per specialty. Ms. Carter further posits that by allowing the employer to have an additional specialist perform a records review and provide testimony, the inclusion of their testimony subrogates the statutory limitation. Alternatively, Ms. Carter requests that Dr. Bernard's testimony be excluded if the court allows Dr. Cenac's testimony. IPSB maintains that the testimony was not cumulative because each physician offered a different perspective. The testimony provided by the experts allowed for additional perspectives. Ms. Carter had the opportunity to cross-examine all the experts and present Dr. Sledge's deposition testimony.

10

Louisiana Revised Statutes 23:1121 provides that the employee is not required to be examined by more than one physician. Under La.R.S. 23:1124.1, no testimony from more than two physicians shall be permitted where the evidence would be cumulative. Ms. Carter believes that a records review performed by a non-treating physician skirts the rule provided by the statute. Ms. Carter's interpretation of the statute is flawed and appears to refer to the limitation of "more than one" physician in La.R.S. 23:1121, not the limitation in La.R.S. 23:1124.1. We find Ms. Carter's argument is without merit.

The limitation of one treating physician in any specialty is in La.R.S. 23:1121(A) and (B)(1). Louisiana Revised Statutes 23:1121(A) (emphasis added) addresses that an "employer *shall not* require the employee to be *examined by more than one duly qualified medical practitioner* in any one field or specialty unless prior consent has been obtained by the employee." Further, a physician may be deemed an employee's treating physician after the employee sees that physician under the employer's direction. La.R.S. 23:1121(B)(2)(b). Ms. Carter went to Dr. Bernard at the request of IPSB. She also received treatment from Dr. Sledge. Both physicians had examined and/or treated her.

Ms. Carter introduced deposition testimony of Dr. Sledge, in addition to Dr. Bernard's testimony, as both physicians had examined her injuries. We agree with the trial court's determination that IPSB could admit Dr. Cenac's testimony. The trial court could find this testimony provided additional perspectives necessary to aid the factfinder under La.R.S. 23:1124.1. While evidence should not be cumulative, the trial court has discretion to determine how many experts the court wishes to hear. We do not find that the trial court improperly admitted cumulative expert witness testimony. While it is our duty to

11

scrutinize trial court rulings, judgments, and factual findings, we are also mindful that an appellate court must not unduly micromanage those functions.

Next, this court must address whether the trial court erred in its determination that Ms. Carter did not suffer a cervical injury which was causally connected to her work accident. Ms. Carter asserts that she carried her burden of proof and established the causal connection between her work accident and her cervical injury. Moreover, she alleges that the trial court relied on the testimony and opinion from a physician who did not examine her. IPSB alleges that Ms. Carter failed to meet her burden of proof for the cervical injury and that the focus of her care early on was related to her low back and leg pain. Ms. Carter reported her cervical injury over one year later.

"The claimant is still required to prove a work-related accident by a preponderance of the evidence." *Iberia Med. Ctr. v. Ward*, 09-2705, p. 13 (La. 11/30/10), 53 So.3d 421, 431 (citations omitted). "The claimant must demonstrate by a preponderance of proof that the accident had a causal connection with the disability." *Ward*, 53 So.3d at 431 (citing *Quinones v. USF & G*, 93-1648 (La. 1/14/94), 630 So.2d 1303, 1307). "An employee must prove the chain of causation required by the workers' compensation statutory scheme." *Welborn v. Thompson Const.*, 15-1217, p. 4 (La.App. 1 Cir. 2/26/16), 191 So.3d 1086, 1088.

In *Welborn*, the first circuit held that the employee failed to establish a "causal connection between the accident and onset of the disabling symptoms entitling him to the presumption of causation." *Id*. at 1090. The first circuit found that the employee's left shoulder pain had not been established as the result of him dropping a pipe during his employment. *Id*. The employee's medical history

provided to treating physicians "[did] not mention any type of direct blow or fall involving his shoulder." *Id.*

The claimant may prove a causal connection by a "reasonable probability" and "[p]roof . . . need not be shown to an absolute certainty." *Coats v. Am. Tel. & Tel. Co.*, 95-2670, p. 7 (La. 10/25/96), 681 So.2d 1243, 1247. In *Coats*, the Louisiana Supreme Court held that the employee's carpal tunnel was not proven as resulting from an accident during her employment. *Id.* Rather, the Court found the employee's testimony showed her condition was longstanding and not disabling. *Id.*

A claimant "must prove, by a preponderance of the evidence, that the expense is reasonably necessary for the treatment of a medical condition caused by a work-related injury." *Bush v. Avoyelles Progress Action Comm.*, 07-685, p. 6 (La.App. 3 Cir. 10/31/07), 970 So.2d 63, 68 (citing *Steven Liberty Mut. Ins. Co.*, 509 So.2d 720 (La.App. 3 Cir. 1987)).

In *Bush*, this court held that the trial court had not committed error in its determination that the employee, who was injured while attending a seminar for her employer, was entitled to surgery. *Id.* The employer sent Ms. Bush for a second opinion after she had seen a general practitioner, an orthopedist, and an orthopedic surgeon. *Id.* at 65-66. The employer's doctor of choice opined that MRIs of Ms. Bush's cervical spine and thoracic spine were normal and "no surgical intervention was necessary." *Id.* at 66. However, Ms. Bush's orthopedic surgeon maintained that her MRI "show[ed] moderately severe cervical spondylosis . . . a degenerative condition which would have pre-existed the [work-related] accident." *Id.* This court found that the employer's assignment of error, alleging Ms. Bush failed to meet her burden of proof, was without merit. *Id.* This

court determined that greater weight was properly given to the testimony of the physician who treated Ms. Bush and recommended surgery, rather than a radiologist who was asked to perform a records review without ever examining the employee. *Id.*

> In *Bush*, 970 So.2d at 68, this court wrote:
>
> > It is also well settled that greater weight is ordinarily given to the testimony of a treating physician as opposed to that of a physician who examines the plaintiff for diagnostic purposes only. *Fitch v. Vintage Petroleum, Inc.*, 94-346 (La.App. 3 Cir. 11/2/94), 652 So.2d 998, *writ denied*, 95-438 (La. 3/30/95), 651 So.2d 847 . . . . Moreover, causation is not necessarily a medical conclusion, and the ultimate determination as to whether a plaintiff has proved the causation of his disability is made by the courts and not by medical experts. *Martin v. H.B. Zachry Co.*, 424 So.2d 1002 (La.1982).

Ms. Bush had intermittent symptoms and complained of her injuries before the accident. *Id.* at 69. However, Ms. Bush had increased symptoms immediately following the accident and these symptoms were well-documented by her treating physicians. *Id.* at 68-69. Accordingly, this court found that the trial committed no manifest error when the workers' compensation judge decided to accept the testimony of one physician over the testimony of two other physicians. *Id.*

Additionally, in *Ward*, 53 So.3d 421, the Louisiana Supreme Court held that the OWC hearing officer "was not clearly wrong in determining Ms. Ward proved by a preponderance of the evidence" that Ms. Ward sustained an injury to her hand while moving a food cart, while working for Iberia Medical Center as a relief food service worker. *Id*. at 424-32. The Court found that despite surveillance video showing Ms. Ward using her injured hand for "insignificant activities," Ms. Ward had proved the injury and its causal connection to her work-

related accident. *Id.* at 429. The Court reasoned that she met her burden because she reported the injury to her supervisor immediately, her hand was visibly swollen, and the treating physicians opined that she was injured from the work accident prior to viewing the surveillance video which showed her using her injured hand. *Id.* at 432.

Here, Ms. Carter failed to prove her cervical injury by a preponderance of the evidence. Unlike the employees in *Bush* and in *Ward*, who met their burden of proof with well-documented and immediately reported injuries, Ms. Carter did not meet the burden of proof for her cervical injury. As noted by IPSB, Ms. Carter's injuries and care early on focused on her low back and leg pain. It was not until thirteen months after the work-related accident that Ms. Carter reported any cervical complaints. Unlike the plaintiff in *Bush*, who had a degenerative condition which was likely exacerbated by her work accident, Ms. Carter did not establish even a pre-existing injury or degenerative condition that may have been exacerbated by the accident. Ms. Carter went to several physicians; however, she failed to mention any symptoms relating to her cervical injury to the various physicians she saw throughout this time.

Just as the employee in *Welborn*, 191 So.3d 1086, failed to establish that his shoulder injury was the result of dropping a pipe, Ms. Carter was unable to provide support that her cervical injury resulted from her work-related accident, or that she immediately reported it to doctors or her physical therapists. It is not at issue whether Ms. Carter sustained a cervical injury during the same accident because she did not report such an injury. According to her testimony, if accepted as true, despite any corroborating medical evidence, Ms. Carter told Dr. Cobb of her cervical complaints as early as four months after the accident. However, all

15

medical records and physician reports reflect that Ms. Carter did not mention her cervical pain until thirteen months after the work-related accident. Ms. Carter's claim that she reported her cervical complaints to Dr. Cobb cannot be verified.

Ms. Carter could not establish that her cervical injury occurred by a reasonable probability standard. Like the employee in *Coats*, 681 So.2d 1243, whose testimony rebutted her own allegation of a work-related injury, Ms. Carter's testimony established that she likely made no mention of her cervical injury until thirteen months after the accident, saying nothing to Dr. Bernard, Dr. Sledge, or her physical therapists. She provided no evidence from her medical records to prove otherwise. Thus, Ms. Carter did not meet the burden of proof for a cervical injury, nor did she establish a causal connection for the injury, because she did not complain of it until thirteen months after the work-related accident.

Greater weight should be given to the testimony of the examining doctor. However, Dr. Bernard's testimony was equivocal at best. Even if Dr. Cenac's testimony was excluded, or if it was accepted that Ms. Carter told Dr. Cobb of cervical pain four months after the incident, Ms. Carter still failed to establish a causal connection for the cervical injury. We find no manifest error in the trial court's determination that Ms. Carter did not suffer a cervical injury that was causally related to her work accident on May 4, 2011.

Finally, Ms. Carter alleges that the trial court erred in failing to award penalties and attorney fees for the delay in testimony caused by IPSB. IPSB argues that the delay does not merit penalties and attorney fees when Ms. Carter did not even allege a cervical injury for thirteen months following the incident.

Penalties are imposed "to 'nudge the employer into making timely payments when there is no reasonable basis for refusing or delaying its

16

obligations.'" *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 13 (La. 12/1/98), 721 So.2d 885, 893 (quoting *Weber v. State*, 93-62 (La. 4/11/94), 635 So.2d 188, 193). Because Ms. Carter failed to establish the causal connection for the cervical injury and we find no manifest error by the trial court, we do not reach the issue regarding penalties and attorney fees. This issue is rendered moot.

V.

## CONCLUSION

Based upon the foregoing, we affirm the trial court's judgment in favor of IPSB. All costs are assessed to the Appellant, Laura Carter.

**AFFIRMED.**